UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| David E. Blackmore, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **(Civil)** |
| Union Pacific Railroad Company, | ) | |
| a Delaware corporation, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |

COMES NOW Plaintiff David E. Blackmore and for his claims against Defendant Union Pacific Railroad Company, a Delaware corporation, states and alleges as follows:

### Preliminary Statement

1. This is an action to recover damages for personal injuries Plaintiff suffered during the course and scope of his employment on September 25, 2020 while working as a switchman for Defendant. Plaintiff's claims against Defendant are brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60.

### Parties

2. That at all times relevant herein, Plaintiff was a resident and citizen of Kansas City, Missouri, and was employed by Defendant as a switchman engaged in interstate commerce.

3. That at all times relevant herein, Defendant was a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Omaha, Nebraska; was duly licensed to operate a system of railroads, as a common carrier of freight for hire in and through the State of Nebraska; and was engaged as a common carrier in interstate commerce.

**Jurisdiction and Venue**

4.  This Court has subject-matter jurisdiction over Plaintiff's claims under the FELA pursuant to 28 U.S.C. § 1331 (federal question).

5.  This Court has personal jurisdiction over Defendant because its principal place of business is in Omaha, Nebraska, and it purposefully availed itself of the privilege of conducting significant activities in the State of Nebraska, creating sufficient contacts within the state to permit this Court to exercise jurisdiction.

6.  Venue of this lawsuit in this Court is proper pursuant to 45 U.S.C. § 56 which allows bringing FELA claims in the district of the residence of the defendant or in the district where the defendant is doing business at the time the action is commenced.

7.  This action brought under the FELA is timely commenced pursuant to 45 U.S.C. § 56.

**Facts**

8.  That on September 25, 2020 at about 10:40 a.m., Plaintiff was in the course and scope of his employment as a switchman for Defendant at its Neff Yard located in Kansas City, Missouri.  Plaintiff was part of a two-person crew with the other member being William Hilton, and they were assigned to work the YKC54R remote job.  The crew was required to switch cars in the west end into tracks 60 through 66.  The involved tracks were part of "a bowl" where cars are shoved or "kicked," and the tracks include an incline that stops the railcars after they have been kicked onto the tracks.

9.  Plaintiff and Hilton were required to kick railcar MBLX 5391 onto track number 65.  The railcar was part of a string of three cars that was attached to locomotive UP669.  The movement of the locomotive was by a remote-control device operated by Plaintiff while on the

2

ground. The locomotive in question was manufactured in about 1968 and was converted to a remote-control locomotive (RCL). The locomotive was defective because it was unreliable in its reaction to directions given by the remote control, and it was underpowered for the switching job.

10. As the locomotive shoved the string of three cars that included railcar MBLX 5391 at the end of the string, Plaintiff used the remote-control device to power the locomotive to a sufficient speed to kick the car. He next put the locomotive in a coast and applied the independent brake, while at the same time walking along with the railcar to pull the pin lifter in order for railcar MBLX 5391 to separate from the other two railcars and locomotive. When Plaintiff pulled the pin lifter to disengage or release the railcar, it failed to work in an efficient manner by releasing the car. Because the pin lifter failed to disengage or release the car, Plaintiff continued to walk along side the railcar as its speed increased. Plaintiff jiggled the handle of the pin lifter, which caused it to finally release the railcar. After the separation, Plaintiff fell and his left leg was runover by the moving equipment, which resulted in an amputation of the lower left leg.

11. Plaintiff was found near a crossing, and the ground area was unsafe due to uneven surface that was uphill with debris scattered throughout the area. Additionally, the lip of the crossing had a three-inch drop, which also created an unsafe walking and working conditions.

12. The switching procedures Plaintiff was required to follow were inappropriate and unsafe because such procedures are only appropriate where tracks are flat and do not involve an elevation, grade, or uneven ground surface. Due to the elevation, grade or uneven ground surface, Plaintiff was required to kick the cars at an unsafe speed.

13. The defective pin lifter, the unreliable and underpowered locomotive, the unsafe work procedures, and unsafe ground conditions all contributed to the incident resulting in Plaintiff's injuries.

**Count One (Strict Liability/Negligence per se)**

14. Plaintiff adopts and incorporates his previous allegations as set forth in paragraphs 1 through 13.

15. Plaintiff's injuries were caused, in whole or in part, by Defendant's violation of the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301-2036, when it used or allowed to be used on its railroad lines a railcar that was not equipped with a properly working coupler mechanism as required under 49 U.S.C. § 20301(a)(1)(A). The pin lifter, which was part of the coupler, was defective and unsafe when it failed to uncouple and release railcar MBLX 53912 from the other two railcars and locomotive as Plaintiff kicked the railcar onto track number 65.

16. As a result of the above-described violation, Plaintiff suffered severe and permanent injures and damages, including traumatic injuries to his left leg resulting in amputation of his lower leg below the knee, back and torso. As a result, Plaintiff has suffered pain in the past and will suffer pain in the future; has incurred expenses for medical treatment, and will incur further medical expenses in the future; has suffered loss of earnings and loss of future earning capacity; has suffered loss of his enjoyment of living; and has suffered permanent injury and disability, all to his injury and damage.

**Count Two (Strict Liability/Negligence per se)**

17. Plaintiff adopts and incorporates his previous allegations as set forth in paragraphs 1 through 16.

18. Plaintiff's injuries were caused, in whole or in part, by Defendant's violation of the Federal Locomotive Inspection Act (FLIA), 49 U.S.C. §§ 20701-20703, when it used or allowed to be used a locomotive on its railroad line that was not in proper condition and safe to operate without unnecessary danger of personal injury as required under 49 U.S.C. § 20701. Defendant's

locomotive UP669 was defective when it failed to react to the remote-control device operated by Plaintiff and was underpowered and unsafe for the switching job to which Plaintiff was required to perform.

19. As a result of the above-described violation, Plaintiff suffered severe and permanent injures and damages, including traumatic injuries to his left leg resulting in amputation of his lower leg below the knee, back and torso. As a result, Plaintiff has suffered pain in the past and will suffer pain in the future; has incurred expenses for medical treatment, and will incur further medical expenses in the future; has suffered loss of earnings and loss of future earning capacity; has suffered loss of his enjoyment of living; and has suffered permanent injury and disability, all to his injury and damage.

## Count Three (Strict Liability/Negligence per se)

20. Plaintiff adopts and incorporates his previous allegations as set forth in paragraphs 1 through 19.

21. Plaintiff's injuries were caused, in whole or in part, by Defendant's violation of Mo. Stat. § 389.797, when it failed to keep and maintain the margins alongside the involved track free from hazards, including hazards associated with uneven surfaces, debris and three-inch drop at the crossing where Plaintiff was found after the incident. Defendant's violation establishes its fault under strict liability and/or negligence per se as provided for under 45 U.S.C. 54a.

22. As a result of the above-described violation, Plaintiff suffered severe and permanent injures and damages, including traumatic injuries to his left leg resulting in amputation of his lower leg below the knee, back and torso. As a result, Plaintiff has suffered pain in the past and will suffer pain in the future; has incurred expenses for medical treatment, and will incur further medical expenses in the future; has suffered loss of earnings and loss of future earning

capacity; has suffered loss of his enjoyment of living; and has suffered permanent injury and disability, all to his injury and damage.

## **Count Four (Negligence)**

23. Plaintiff adopts and incorporates his previous allegations as set forth in paragraphs 1 through 22.

24. That pursuant to the FELA, 45 U.S.C. § 51, Defendant is liable in damages for injuries resulting in whole or in part from the negligence of Defendant's officers, agents, or employees, or by reason of any defect or insufficiency in its cars, engines, appliances, machinery, track, roadbed and works.

25. Defendant breached it's duty under the FELA when it:

a. Failed and neglected to provide Plaintiff with a reasonably safe place to work;

b. Failed to provide proper equipment, including but not limited to railcars and locomotive;

c. Failed to inspect, maintain, and repair its railcars and locomotive;

d. Failed to inspect, maintain, and repair its tracks, roadbeds, and areas immediately next to tracks for unsafe conditions, including but not limited to uneven ground surfaces that include sudden drop offs and objects immediately adject to its track beds that interfere with employees performing their assigned jobs;

e. Failed to adopt and enforce safe work procedures, including railroad industry rules and procedures, related to switching cars in a bowl; and

f. Other acts of negligence to be determined.

26. In the alternative, Defendant breached its duty under the FELA pursuant to the doctrine of res ipsa loquitur based on:

a. The involved instrumentalities including the structures and objects in the yard, as well as the condition of the yard, was in the exclusive control of Defendant;

b. The incident resulting in Plaintiff's injuries is such, as in the ordinary course of things, does not occur if the one having control uses proper care;

  c.  The incident cause, in whole or in part, Plaintiff's injuries; and

  d.  Plaintiff was not at fault.

  27. As a result of the above-described negligent acts, Plaintiff suffered severe and permanent injures and damages, including traumatic injuries to his left leg resulting in amputation of his lower leg below the knee, back and torso.  As a result, Plaintiff has suffered pain in the past and will suffer pain in the future; has incurred expenses for medical treatment, and will incur further medical expenses in the future; has suffered loss of earnings and loss of future earning capacity; has suffered loss of his enjoyment of living; and has suffered permanent injury and disability, all to his injury and damage.

  **WHEREFORE**, Plaintiff David E. Blackmore prays judgment against Defendant Union Pacific Railroad Company in an amount to be determined as reasonable compensation for all the injuries and damages he has suffered, together with interest thereon as provided by law, and for his costs and disbursements herein incurred, and for such other and further relief as the Court may deem just and appropriate.

  **PLAINTIFF REQUESTS TRIAL BY JURY.**

Dated: August 20, 2021      HUNEGS, LeNEAVE & KVAS, P.A.

              */s/ Paul Banker*
              Randal W. LeNeave, NE ID #24813
              Paul Banker, MN ID #0256596
              Attorneys for Plaintiff
              1000 Twelve Oaks Center Drive, Suite 101
              Wayzata, Minnesota 55391
              Telephone: (612) 339-4511
              Facsimile: (612) 339-5150
              rleneave@hlklaw.com
              pbanker@hlklaw.com