IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID E. BLACKMORE,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation;<br><br>    Defendant. | 8:21CV318<br><br>**MEMORANDUM AND ORDER** |

This case is before the court on Defendant Union Pacific Railroad Company's ("UP" or "Defendant") Motion for Protective Order (Filing No. 49), and Plaintiff David Blackmore's Motion for Sanctions under Fed. R. Civ. P. 37(d). (Filing No. 52).

Plaintiff worked for UP as part of a team switching cars in the Neff Yard, located in Kansas City, Missouri. (Filing No. 1). As part of Plaintiff's job, he walked alongside a railcar to pull a pin-lifter which separates the railcar from the other railcars and the locomotive. He alleges that on September 25, 2020, the pin-lifter failed to disengage or release the railcar and as the railcar picked up speed, he fell. His leg was run over by the equipment, resulting in an amputation of his lower left leg.

On August 20, 2021, Plaintiff brought this action against Defendant pursuant to the Federal Employer's Liability Act, 45 U.S.C. §§ 51-60; the Federal Safety Appliance Act, 49 U.S.C. § 20301-2036; the Federal Locomotive Inspection Act, 49 U.S.C. § 20701-20703; and Mo. Ann. Stat. § 389.797 (West) to recover damages for the injuries he sustained on September 25, 2020. Plaintiff's complaint

asserts three claims of negligence per se/strict liability and one claim of general FELA negligence. UP's answer asserted a total of seventeen defenses. (Filing No. 6 at CM/ECF pp. 6-9).

Plaintiff served a 30(b)(6) notice on May 13, 2022, requesting testimony from UP identifying: "all facts, witnesses, or documents" supporting ten of those defenses (specifically, Paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 13, 14) and the facts, circumstances, and witnesses that encompass "the data, creation, use, storage, and maintenance of RIM (Risk Incident Management) maps of the Neff Yard". (Filing No. 54-7 at CM/ECF pp. 2-3).

Pending before me are UP's motion for a protective order as to the Rule 30(b)(6) deposition, and Plaintiff's motion for sanctions because UP did not attend the noticed deposition.

## PRIOR DISCOVERY

Plaintiff served Rule 33 interrogatories on October 4, 2021. Interrogatory No. 12 requests disclosure of "all facts supporting each and every affirmative defense asserted by Defendant and identify all witnesses and documents that support each affirmative defense." (Filing No. 54-4 at CM/ECF p. 7, see also Filing No. 49). Defendant initially objected, stating that the request was "overly broad, unduly burdensome, designed to harass or annoy, and beyond the scope of discovery." (Filing No. 54-3 at CM/ECF p. 6). UP supplemented its interrogatory answers and responses to requests for production on January 18, 2022, February 2, 2022, and April 1, 2022. (Filing No. 54-4; Filing No. 54-5).

The April 1, 2022 supplemental answers to interrogatories specifically addressed Interrogatory No. 12. As to defenses 1 and 15,[1] UP stated, "Defendant stands on its objections, particularly that this request seeks the legal theories and mental impression of counsel." ([Filing No. 54-4 at CM/ECF p. 8](#)). For defenses 2, 3, 4, 5, and 13,[2] UP stated:

> Plaintiff's negligence, and specifically his numerous rules violations, noted elsewhere in these responses, solely caused Plaintiff's injuries. Alternatively, if Plaintiff's negligence was not the sole cause of his injuries, his rules violations constitute contributory negligence that may reduce his potential recovery. See, Plaintiff's deposition transcript, the deposition transcripts of other UP employees deposed in this case, the witnesses disclosed by both parties, Defendant's forthcoming expert disclosures and the photographs, video and other data collected following the accident that depict the scene, instrumentalities, location, direction, speed and other information about the accident.

---

[1] Defense ¶ 1 states, "Some or all of Plaintiff's claims may fail to state a claim or claims upon which relief can be granted." Defense ¶ 15 states, "Plaintiff's claims may be precluded or preempted, in whole or in part, by state or federal law, including but not limited to the Interstate Commerce Commission Termination Act."

[2] Defenses 2 and 5 are not affirmative defenses. Instead, they refute allegations for which the plaintiff bears the burden of proof. Specifically:

> Defense ¶ 2 states, "Plaintiff's alleged injuries and damages, if any, were not caused by any alleged act or omission of Defendant, its agents, or its employees."

> Defense ¶ 5 states, "Plaintiff's damages, if any, were the result of unforeseeable circumstances that could not have been reasonably anticipated by Union Pacific or the result of causes, conditions or other factors that Union Pacific did not cause or contribute to, and Union Pacific is therefore not legally responsible for Plaintiff's damages."

Defenses 3, 4, and 13 raise plaintiff's negligence or violation of duties as affirmative defenses for which the railroad bears the burden of proof. Specifically:

> Defense ¶ 3 states, "The injuries and damages allegedly sustained by Plaintiff may have been caused by Plaintiff's sole negligence, thereby reducing or eliminating any recovery."

> Defense ¶ 4 states, "The cause of Plaintiff's damages, if any, may have been Plaintiff's comparative or contributory negligence, which reduces the potential recovery as provided in 45 U.S.C. § 53."

> Defense ¶ 13 states, "Plaintiff's claims may be denied due to Plaintiff's violation of the primary duties of his job duties, assignments, and expectations."

(Filing No. 54-4 at CM/ECF pp. 8-9).

For affirmative defense 6,[3] UP asserted that Plaintiff had not availed himself of the free vocational services available to him or taken any concrete steps to obtain employment and had not "acted reasonably in pursuing employment and maximizing his earning potential." (Filing No. 54-4 at CM/ECF p. 9).

For defenses 7, 8, and 9,[4] UP asserted that the efforts to provide a reasonably safe working environment were described by Plaintiff and other UP employees in their depositions. UP stated that it inspects its locomotives, railcars, and tracks to ensure they meet or exceed FRA standards. UP's response includes details regarding testing, inspection, and reporting standards, as well as employee education. It references Plaintiff's deposition transcript, the deposition transcripts of UP employees deposed in this case, the witnesses disclosed by both parties, the expert disclosures, Plaintiff's HR report, the photographs of the scene, inspection records, and the various rules and instructions documents previously produced. (Filing No. 54-4 at CM/ECF p. 9).

For defense 14,[5] UP denied the nature and extent of Plaintiff's alleged damages, including but not limited to Plaintiff's alleged economic damages.

---

[3] Defense ¶ 6, which alleges "Plaintiff may have failed to mitigate his damages, if any, as required by law," is an affirmative defense for which the railroad bears the burden of proof.

[4] Defenses 7, 8, and 9 refute Plaintiff's claim that the railroad breached its duty owed under the FELA, alleging the railroad 'made reasonable efforts to provide reasonably safe working conditions for Plaintiff," (Defense ¶ 7); "made reasonable effort to provide reasonably safe tools and equipment to Plaintiff," (Defense ¶ 8); and "made reasonable effort to provide reasonably safe training, supervision, work procedures, and practices to Plaintiff," (Defense ¶ 9). As to Plaintiff's FELA claim, Plaintiff bears the burden of proving the railroad failed to provide a safe place to work. As such, defenses 7, 8, and 9 are not affirmative defenses.

[5] Defense 14 "denies the nature and extent of Plaintiff's alleged injuries or damages." Plaintiff bears the burden of proving his damages. Defense 14 is not an affirmative defense.

Defendant stated it would comply with the expert disclosure deadlines set in the progression order for this case. (Filing No. 54-4 at CM/ECF p. 10). [6]

On April 1, 2022, Defendant disclosed a Risk Incident Management ("RIM") map showing prior incidents in Neff Yard. (Filing No. 54-5 at CM/ECF p. 9). Plaintiff asserts it first learned of the RIM map from UP manager Steve O'Neal on March 9, 2021, and "Plaintiff has not been provided an opportunity to investigate the UP document, its meaning, its contents, or the circumstances leading to its creation due to the delayed disclosure." (Filing No. 53 at CM/ECF p. 3).

Defendant objected to the 30(b)(6) notice in its entirety, stating that the notice was duplicative of information it previously provided through interrogatory answers and the testimony of UP management employees. (Filing No. 54-8). Defendant specifically asserted that UP had served Plaintiff with supplemental answers to interrogatories providing its position on the defenses and Plaintiff had deposed six of UP's management employees and was able to question the witnesses on those topics.

A conference was held with the parties and the undersigned on May 27, 2022. (Filing No. 48, audio file). During the May 27, 2022 conference, the parties discussed the 30(b)(6) deposition notice, specifically Plaintiff's request for "all facts, witnesses, or documents" related to each topic. During this preliminary discussion, and without the benefit of the parties' briefing, the court agreed that the

---

[6] Defendant supplemented its responses to Interrogatory 12 as it relates to defenses 1, 10, 12, 15, and 16. For example, UP withdrew defense 16, reserving the right to reassert the defense if the facts and evidence support it, and as to defenses 10 and 12, UP claimed it is entitled to offsets for any amounts paid if Plaintiff had received any Railroad Retirement Board benefits, and the right to withhold any railroad retirement taxes or Medicare taxes from any judgment Plaintiff may receive. (Filing No. 54-4 at CM/ECF p. 10). Defenses 1, 10, 12, 15, and 16 are not topics included within the 30(b)(6) notice at issue.

5

railroad must clearly disclose the basis for its defenses.[7] But the undersigned also observed:

> The way [the deposition topics] are drafted right now is broad enough to include work product. I don't think that was the intent of the Plaintiff to do that. But, I also do think the railroad does need to answer what it thinks the Plaintiff did wrong. And what it thinks it did right, and why it thinks that this accident is to no fault of the railroad and either all or in part the fault of the plaintiff.

(Filing No. 48, audio file at 41:00).

The court advised the parties that this observation was indicative of the court's leaning on the subject: It was not a court ruling. The parties agreed to continue working toward a compromise as to the 30(b)(6) deposition issues.

Emails exchanged by the parties indicate the parties disagreed as to whether the 30(b)(6) notice should be amended following the May 27, 2022 conference. Plaintiff's counsel wanted to proceed with the deposition as noticed, with the understanding that Defendants could raise work product or attorney client privilege objections during the deposition. (Filing No. 54-8 at CM/ECF pp. 3-4) Defendant stated it was unwilling to hold the deposition without revising the topics to clarify the specific boundaries of deposition questioning. (Filing No. 54-8 at CM/ECF p. 4). The parties exchanged multiple emails throughout the following week.

---

[7] Although not specifically stated on the record, it was the undersigned's expectation that the parties would meet and confer following the May 27, 2022 conference to revise the deposition notice to narrow the language of each topic. It is apparent from the emails between counsel following that conference that the parties had differing interpretations of the path forward. I advised the parties during the call that if there was further disagreement, the parties could file a motion and I would review the relevant case law to resolve it. In addition, the undersigned was available to discuss the issue and provide clarification if there was confusion regarding my expectations on whether the deposition notice should be revised.

On Thursday June 2, 2022, Plaintiff distributed the zoom link for the deposition (Filing No. 54-8 at CM/ECF pp. 6-7), and Defendant responded by stating "We are not presenting a corporate witness on 6/6. We will be sending a formal letter outlining our objections and identifying witnesses and documents as requested in the notice shortly in an effort to amicably resolve this dispute." (Filing No. 54-8 at CM/ECF p. 7). Plaintiff stated, in part, "[I]f UP's position is that it simply will not present a 30(b((6) witness at all on any topic, then you'd best file a motion for protective order. The depo on the calendar for Monday remains on until you do so." (Filing No. 54-8 at CM/ECF p. 8).

On Friday June 3, 2022, Defendant conclusively stated that a witness would not be presented as to the <u>current draft</u> of the notice. Defense counsel indicated they would send a letter to Plaintiff's counsel and that a motion would be filed "promptly, though that may not be by Monday."[8] (Filing No. 54-8 at CM/ECF p. 8). Defense counsel clarified "if you are willing to refine and amend the notice, then we can discuss whether we will present a witness." (Filing No. 54-8 at CM/ECF p. 9).

Defendant sent an 11-page letter to Plaintiff on Friday June 3, 2022, outlining the reasons for its objections to the 30(b)(6) deposition. See Filing No. 58-5. Defendant argued that the discovery sought must be nonprivileged, relevant, proportional to the needs of the case, and the burden or expense of the proposed discovery must not outweigh its likely benefit. Id. at CM/ECF p. 2, See Fed. R. Civ. P. 26(b). Defendant stated its position that the deposition topics listed in the 30(b)(6) notice sought, at least in part, legal conclusions and information protected by the attorney-client and attorney work product privileges. (Filing No. 58-5 at CM/ECF p. 2). UP acknowledged that a 30(b)(6) witness could be asked about

---

[8] Monday, June 6, 2022, the date of the noticed deposition.

7

facts, but a lay witness "should not be expected to testify as to how any such facts form the basis of a legal affirmative defense." (Id.) UP argued that because affirmative defenses are drafted by attorneys, asking a 30(b)(6) witness to answer questions regarding affirmative defenses makes it difficult to distinguish between relevant facts and the legal consequences of those facts.

UP argued that the topics were overbroad, unduly burdensome and also duplicative of the topics already answered by UP's interrogatory responses, document production, initial disclosures, and the testimony of the 10 Union Pacific employees (including 6 managers) who had already been deposed. UP explained this prior discovery disclosed UP's knowledge of the accident, and its training and the post-accident investigation and findings. (Filing No. 55 at CM/ECF p. 3). UP's letter included responses to the noticed deposition topics. For Topic 1 (defense 2), UP's response was substantially the same as the interrogatory response provided on April 1, 2022. UP asserted Plaintiff's rules violations and negligence were the sole cause of his injuries or contributed to his injuries. UP asserted its position was supported by 19 witnesses, Defendant's documents (listed by Bates number), Plaintiff's documents (listed by Bates number), the deposition transcripts and exhibits of 11 witnesses, and Defendant's expert reports. (Filing No. 58-5 at CM/ECF pp. 4-7). The responses for defenses 3, 4, 5, 7, 8, 9, 13, and 14 referred to UP's response to Topic 1.

As to Topic Number 5 (affirmative defense 6), Plaintiff's failure to mitigate damages, Defendant referred to 8 named witnesses, documents produced by Defendant (listed by Bates number), Plaintiff's documents, Defendant's expert reports and the deposition transcripts of 5 individuals, including Plaintiff. (Filing No. 58-5 at CM/ECF p. 9).

Finally, UP objected to Topic Number 11 (data, creation, use, storage, and maintenance of the RIM maps of the Neff Yard) based on relevance. Nonetheless, UP referenced the RIM map document, and witnesses Tim Green, Ed Nord, Steve O'Neal, Nate Burkhart, Jake Hammond. The response stated that Steve O'Neal had specifically testified about this document. (Filing No. 58-5 at CM/ECF p. 10). UP concluded the letter by stating that it was willing to work with Plaintiff to narrow the scope and clarify the requests.

On June 6, 2022, the Defendant filed the pending motion for protective order asserting Plaintiff's 30(b)(6) notice is "overbroad, unduly burdensome, needlessly duplicative, and seeks mental impression of defense counsel protected by attorney-client privilege."[9] (Filing No. 49, Filing No. 49-1 at CM/ECF p. 2). Defendant explained that the notice seeks depositions in excess of the seven depositions contemplated in the parties' Rule 26(f) Meeting Report and that the information sought by the deposition has been disclosed in UP's response to interrogatories, requests for production, and initial disclosures. UP's motion states it has produced "well over 6,000 documents in its responses to requests for production, in seven (7) supplements to its initial disclosures (as of the date of filing), and with other disclosures." (Filing No. 49 at CM/ECF p. 3). The most recent supplemental disclosures, Defendant's eighth supplemental Rule 26(a) disclosures, are dated June 2, 2022. (Filing No. 51-6).

On June 21, 2022, Plaintiff responded to Defendant's motion for protective order and filed a Motion for Sanctions under FRCP 37(d). (Filing No. 52).

---

[9] The court's electronic docket states Defendant's motion for protective order was filed at 3:10 p.m. CDT on June 6, 2022. (Filing No. 49). The deposition was noticed to begin at 10:00 a.m. on June 6, 2022.

9

ANALYSIS

I.      Standard

District courts have broad discretion to limit discovery and decide discovery motions. Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc., 237 F.R.D. 215, 218 (D. Neb. 2006), citing Pavlik v. Cargill, Inc., 9 F.3d 710, 714 (8th Cir.1993). And a magistrate judge is afforded broad discretion in the resolution of nondispositive discovery disputes. Vishay Dale Elecs., Inc. v. Cyntec Co., No. 8:07CV191, 2008 WL 5396675, at *1 (D. Neb. Dec. 23, 2008). As the Supreme Court has stated, because discovery rules should " 'be construed to secure the just, speedy, and inexpensive determination of every action'... judges should not hesitate to exercise appropriate control over the discovery process." Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 927 (8th Cir.1999) (quoting Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) and Fed.R.Civ.P. 1).

II.      Motion for Protective Order

Defendant moves for a protective order pursuant to Fed. R. Civ. P. 26(a) asking the Court to "forbid inquiry into matters set out in Plaintiff's Rule 30(b)(6) notice or limiting the scope of disclosure or discovery to those matters; or, in the alternative, prescribing a discovery method other than the one selected by the party seeking discovery; or for any other such relief as the Court deems just under the circumstances." (Filing No. 49).

In support of this request, Defendant argues that the topics are overly broad and unduly burdensome because they encompass privileged information, including information protected by the attorney work-product doctrine, and attorney client privileged communication. Defendant also argues the topics seek

10

information which is better obtained through other discovery methods, such as the interrogatories already answered.

The court reviews the parties' positions under Federal Rule of Civil Procedure 26. Rule 26 defines the scope of discovery as "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." Discovery that is unreasonably burdensome, cumulative, or outside the scope permitted by Rule 26(b)(1) should be limited by the Court. See, Fed. R. Civ. P. 26(b)(2)(C). Fed. R. Civ. P. 26(c) permits a party to request, and upon a showing of good cause, the court to enter an order protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(c)(i).

Under the circumstances presented, when deciding whether to grant UP's motion for a protective order, this court must consider: "1) whether the attorney-client privilege or work product doctrine prevents the witness from answering questions regarding facts supporting the parties' contentions or affirmative defenses, and (2) if not, whether a Rule 30(b)(6) deposition is an overly burdensome method of acquiring this information, or whether less burdensome methods exist." Arctic Cat, Inc. v. Bombardier Recreational Products, Inc., 2014 WL 12610146, at *6 (D. Minn. 2014).

A. Attorney-client privilege and work product doctrine

Plaintiff's 30(b)(6) notice asks UP to produce a witness to reveal all information UP possesses and believes support the defenses and affirmative defenses in UP's answer. The parties agree that the attorney client privilege or

11

work product doctrine do not provide a basis for nondisclosure of relevant facts. They disagree on whether responding to Plaintiff's Rule 30(b)(6) notice topics, as drafted, would divulge UP's work product.

When a 30(b)(6) witness is asked to disclose "all facts" supporting a legal claim or defense, it is "extremely difficult to distinguish between 'facts' (not protected) and the issue of why those facts have legal consequences, which usually has a work-product (lawyer's mental impressions) dimension," particularly since the party's lawyer was the likely source of the information provided to a witness during preparation for a Rule 30(b)(6) deposition. Fidelity Management & Research Co. v. Actuate Corp., 275 F.R.D. 63 (D. Mass. 2011). UP's Rule 30(b)(6) designee cannot know all the facts UP will advance as supporting its defenses without receiving the deposition response from its counsel. For example, consistent with my discussions with counsel during the pre-motion telephonic conference, UP as an entity would know if an injured employee did not apply for internal job postings for which he was qualified—a fact that may support a failure to mitigate defense. But if the railroad intends to argue the employee failed to apply for <u>any</u> new employment following his injury, UP itself would not know "all facts" supporting the failure to mitigate defense unless its counsel collected plaintiff's responses to written discovery, responses to third-party subpoenas regarding alleged external job applications, deposition testimony by the plaintiff on efforts to find a job, and any expert reports on job market options available to the plaintiff. The lawyer would have to explain to the 30(b)(6) witness how the information accumulated during post-litigation discovery supports the railroad's failure to mitigate defense. Moreover, even assuming an entity's Rule 30(b)(6) designee knew all the underlying facts of a case—including those collected during the discovery process—he or she cannot be certain of which facts the railroad's legal counsel will rely on as supporting the alleged defense unless the lawyer prepares him to answer that question. So, when the 30(b)(6) witness is asked for all facts

supporting, for example, the failure to mitigate defense, he will essentially be parroting the lawyer's trial strategy for presenting evidence in favor of that defense.

The lawyer's thought processes and organization of evidence for trial is work product—whether requested directly from UP's lawyer or through the conduit of a 30(b)(6) witness. When asked to explain all facts supporting a defense or claim, the 30(b)(6) designee's deposition testimony reveals which facts opposing counsel found important, counsel's mental impressions, and counsel's conclusions or opinions about those facts. In other words, a deponent's answers to 30(b)(6) requests for all facts supporting a claim or defense impermissibly discloses counsel's work product. Fairview Health Services v. Quest Software Inc., 2021 WL 5087564, at *7, (D. Minn. 2021).

B. Overly Broad, Unduly Burdensome, Duplicative

Even assuming Plaintiff's contention topics do not implicate the attorney-client privilege or work product doctrine, they are nonetheless subject to review as overly broad and unduly burdensome. UP objects to the noticed deposition topics, arguing it has already responded to Interrogatory 12, which required Union Pacific to disclose the facts, witnesses, or documents supporting its affirmative defenses.[10]

It is widely accepted that Rule 30(b)(6) "contention topics" which require an opposing party "to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense" or claim are overbroad and improper. Rule 30(b)(6) topics which seek to elicit deposition testimony on all facts in support of a

---

[10] I note that Interrogatory 12 asks for the facts supporting the railroad's affirmative defenses, and of the topics within the 30(b)(6) notice, only paragraphs 3, 4, 6, and 13 relate to affirmative defenses. That said, the railroad has responded to Interrogatory 12 as to all its defenses, not merely the affirmative defenses.

13

claim or contention are unduly burdensome, unwieldy, and disproportionate to the needs of the case. Fairview Health Services at *6-7 (collecting cases); Inline Packaging, LLC v. Graphic Packaging International, Inc., 2018 WL 9919939, at *10 (D. Minn. 2018); In re Indep. Serv. Organizations Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (["T]o provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to [the 30(b)(6) designate] so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information.").

UP argues the burden of providing a 30(b)(6) witness is wholly unnecessary because it previously answered the 30(b)(6) topics when it responded to Interrogatory 12. I have reviewed the interrogatory responses, (Filing No. 54-4) and UP's letter dated June 3, 2022, (Filing No. 58-5), and for the most part, I agree with UP. Of the topics listed in the Rule (30)(b)(6) notice, UP has adequately responded to the allegations in their defenses 2, 5, 6, 7, 8, 9, and 14. The motion for protective order as to those defenses in UP's Answer will be granted. See Medtronic Inc. v. Edwards Lifesciences Corp., 2013 WL 12149252 (D. Minn, 2013) (stating that upon supplementation of contention interrogatory responses, "there is no reason to also allow a Rule 30(b)(6) on the very same topic—to do so would be duplicative and unduly burdensome.").

As to the affirmative defense of contributory negligence in paragraphs 3, 4, and 13 of UP's answer, UP has identified the witnesses and documents it will rely on, (Filing No. 54-4 at CM/ECF pp. 8-9), but other than a vague reference to its other discovery responses, it has not stated with any specificity what it believes the plaintiff did wrong; for example, which rules (by number) were allegedly violated, whether plaintiff failed to follow instructions, whether he failed to keep a

14

lookout for moving boxcars, whether he failed to use tools provided and available, etc. While notice pleading is sufficient at the outset of a federal lawsuit, in an action arising in tort, discovery is designed to elicit a descriptive listing of the opposing party's alleged negligent or wrongful actions or inactions.

By the time of the pretrial conference, the pretrial conference order must say more than "UP failed to provide a safe place to work" or "Plaintiff failed to perform his job in a reasonably safe manner." To avoid a moving target at trial and an associated trial by ambush, both parties' discovery responses must describe what the other allegedly did wrong, and those discovery responses will frame the statement of disputed issues listed in the pretrial conference order. A party's specific allegations of negligence which were requested but never disclosed in response to the opponent's discovery cannot be listed in the pretrial conference order.

Courts have concluded that a Rule 30(b)(6) deposition is burdensome, poses serious work product issues, and is not the proper vehicle for obtaining a summary of the opposing parties' allegations, noting and holding that discovery under other rules is more appropriate. Fidelity Management & Research Co. v. Actuate Corp., 275 F.R.D. 63, 65 (D. Mass. 2011) (noting interrogatories may be the best option to conducting contention discovery and if a deposition in needed, ordering a "more convenient, less burdensome and less expensive" Rule 31 deposition upon written questions rather than a Rule 30(b)(6) deposition). Under the circumstances presented, the court will grant UP's motion for protective order as to producing a Rule 30(b)(6) designee for the defenses in paragraphs 3, 4, and 13 of UP's Answer. The court will, however, order UP to supplement its prior response to interrogatory 12 by stating with particularity how it contends Plaintiff's own conduct or lack thereof caused his accident and resulting injury, and what rules, job duties, assignments, and expectations he violated. (Defense ¶¶ 3, 4, 13).

15

Interrogatory 12 must be further supplemented to include, either within the body of the interrogatory response or through incorporation by reference, the information within the June 2, 2022 letter. The supplemental interrogatory response must be signed under oath by a railroad representative.

Unlike the other topics in Plaintiff's 30(b)(6) notice, Topic 11 does not reference UP's Answer. It is not a request for information UP will use to support a claim or defense. Rather, Topic 11 requests a 30(b)(6) designee to "[i]dentify all facts, circumstances, and witnesses that encompass the data, creation, use, storage, and maintenance of RIM (Risk Incident Management) maps of the Neff Yard." (Filing No. 49-2, ¶ 11). UP objects to this topic as irrelevant.

Plaintiff has the burden of showing the discovery requested is relevant. In response to UP's argument, Plaintiff states "a Risk Incident Management ("RIM") map show[s] prior incidents in Neff Yard." (Filing No. 50, at CM/ECF p. 3). See also, Filing No. 51-5, at CM/ECF p. 8 (O'Neal deposition). Plaintiff does not, however explain how the RIM map is relevant to his case, and the connection is not otherwise apparent from the testimony Plaintiff has already elicited on the topic from UP Manager Steve O'Neal. (See [Filing No. 51-5, at CM/ECF pp. 8-11, 15](#)). That is, the court does not understand how the location, facts, and witnesses for other accidents at the Neff Yard, all or many of which involve wholly different circumstances (e.g., derailments, run through switches, etc.) is relevant to this case. UP's motion for protective order on this topic will be granted.

### III.     Motion for Sanctions

Plaintiff filed a motion for sanctions because at the time of the noticed deposition, Defendant did not appear or produce a witness for the 30(b)(6) deposition, and there was no protective order in place nor any pending motion for

16

protective order filed under Rule 26(c). (Filing No. 52). See Fed. R. Civ. P. 37(d)(2). Plaintiff seeks an award of expenses and asks the court to strike Defendant's fact-based defenses and assertions that were the subject of the noticed 30(b)(6) deposition.[11] See Fed. R. Civ. P. 37(b)(2)(A), (Filing No. 53).

> Under Fed. R. Civ. P. 37(d)(3):
>
> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Defendant's motion for protective order was filed five hours after the noticed deposition. However, Defendant made significant attempts in the weeks leading up to the deposition to meet and confer regarding its objections to the deposition topics, as noticed. Additionally, Defendant informed Plaintiff on June 2, 2022 that a witness would not be produced to provide testimony on the deposition topics as currently drafted. Defendant also informed Plaintiff on June 3, 2022 that a motion for protective order would be filed but that it could be delayed because defense counsel was scheduled for trial hearings and trial in Missouri on June 6 and 7. As noted in Defendant's brief, the parties had been engaged in an active discussion in attempt to resolve the dispute: Defendant was not preparing to file a motion for protective order until it became clear that the parties were at a stalemate late in the afternoon on Friday, June 3. (Filing No. 54-8 at CM/ECF pp. 10-11). Defendant

---

[11] Plaintiff requests an order: (1) striking Defendant's affirmative defenses 2-9, 13, and 14, prohibiting Defendant from raising those defenses at trial, and directing Defendant to pay for the expenses incurred by Plaintiff in bringing the motion for sanctions; or, (2) directing Defendant to produce a 30(b)(6) witness, requiring that witness to attend a deposition on the noticed topics, and directing Defendant to pay the costs incurred for the unattended deposition, bringing the motion for sanctions and any other motions arising from this dispute. (Filing No. 52).

17

filed its motion on Monday, June 6, the first business day following those discussions, and only a few hours after the deposition was to begin.

Having found there are grounds for a protective order limiting the 30(b)(6) deposition topics, Defendant's hesitation to participate in the deposition as noticed was reasonable. While a motion for protective order should typically be filed prior to the start of a noticed deposition, Plaintiff's counsel attended the 30(b)(6) deposition on June 6, 2022, despite advance notice that defense counsel and a UP representative would not be present at the deposition as noticed, and that UP intended to move for a protective order. Plaintiff's counsel now asks to be compensated for that time and expense.[12]

Under the facts presented, imposing sanctions on UP would effectively punish it for its ongoing attempts—even to the last business day before the deposition—to respond to or redraft the scope of the deposition topics, thereby resolving the deposition dispute without court intervention. And under the facts presented, the court has already verbally advised Plaintiff's counsel that his deposition topics, as written, encompassed work product. Although the deposition could have gone forward with both sides fully aware that privilege objections would be raised throughout, discovery must be conducted in a manner that leads to the just, efficient, and expeditious resolution of a case. Fed. R. Civ. P. 1. Investing the time to take a deposition riddled with privilege objections, draft motions to compel and supporting briefs as to questions that were not answered, and then having the

---

[12] If Plaintiff attended the deposition with the goal of obtaining sanctions, this type of gamesmanship contravenes the spirit of Fed. R. Civ. P. 1 ("to secure the just, speedy, and inexpensive determination of every action and proceeding.") However, Plaintiff's counsel states that was not his intent. (Filing No. 6). The undersigned magistrate judge remains available and willing to assist with discovery disputes. Had the parties requested further assistance or clarification following the May 27, 2022 telephone conference, it would have been readily provided and formal motion practice and delay may have been avoided. The parties should bear this in mind as this case, and others, progress through the Nebraska federal court.

court sift through the parties' motion practice to craft an order (which may or may not order disclosure of additional discovery) is the antithesis of Rule 1's purpose.

Under the circumstances presented, Defendant's failure to produce a Rule 30(b)(6) witness at 10:00 a.m. on June 6, 2022 was substantially justified. Its five-hour delay in filing a motion for protective order is excusable, and its objections to the broad topic descriptions in the 30(b)(6) notice were justified. Sanctions are not appropriate, and Plaintiff's request for attorney fees, that Defendant's affirmative defenses be stricken, and that Defendant be prevented from raising these defenses at trial will be denied.

IT IS ORDERED:

1) As to Defendant's Motion for Protective Order (Filing No. 49),

    a. UP must supplement its prior response to interrogatory 12 as follows:

        i. UP must state with particularity how it contends Plaintiff's own conduct or lack thereof caused his accident and resulting injury, and what rules, job duties, assignments, and expectations he violated (See UP defenses in paragraphs 3, 4, and 13 of its Answer);

        ii. The contents of UP's June 2, 2022 letter must be included in the response to Interrogatory 12, either within the body of the interrogatory response or by incorporating the letter by reference; and,

        iii. The supplemental interrogatory response must be signed under oath by a railroad representative.

    b. In all other respects, the motion is granted.

2) Plaintiff's motion for sanctions is denied. (Filing No. 52).

August 29, 2022.

                                              BY THE COURT:
                                              *s/ Cheryl R. Zwart*
                                              United States Magistrate Judge