IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID E. BLACKMORE,<br><br>        Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>        Defendant. | 8:21CV318<br><br>MEMORANDUM AND ORDER |

This matter comes before the Court on defendant Union Pacific Railroad Company's ("Union Pacific's") motions in limine to exclude expert testimony under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993), Filing No. 65; Filing No. 66; Filing No. 67; Filing No. 68. For the reasons set forth herein, the Court denies the motions at Filing No. 65, Filing No. 67, and Filing No. 68 and grants in part and denies in part the motion at Filing No. 66.

## I. BACKGROUND

The case arises out of the injuries Plaintiff, David E. Blackmore, suffered during a railcar accident while working for Union Pacific as a switchman. Blackmore was moving cars by remote control at Union Pacific's Neff Yard in Kansas City, Missouri, when he went under a train car, resulting in his left leg having to be amputated below the knee. Blackmore filed suit against Union Pacific under the Federal Employers' Liability Act ("FELA"), 42 U.S.C. § 51 et seq, alleging it was liable for his injury due to faulty train car couplings, uneven terrain or debris near the tracks, or the engine being underpowered. Union Pacific contended Blackmore himself was solely responsible for the accident by

1

remotely operating the car at too fast of a speed and fouling the tracks.[1] The Court previously denied summary judgment to either side on Blackmore's claim for FELA liability under the Safety Appliance Act, 49 U.S.C. § 20301 et seq. based on faulty train car couplings. Filing No. 97. It granted summary judgment to Union Pacific on Blackmore's FELA claim premised on a violation of the Locomotive Inspection Act, 49 U.S.C. § 20701, because there was no dispute that the engine being allegedly underpowered played no role in Blackmore's accident. The Court denied summary judgment to Union Pacific as to Blackmore's claim for FELA liability under Missouri Revised Statute § 389.797 relating to hazards near the track. Filing No. 97. The matter is set for trial on October 30, 2023. Filing No. 111, Text Notice. Union Pacific moves to exclude four of Blackmore's proposed expert witnesses, Brian Hansen, Brandon Ogden, Alison Wohlhuter, and Shannon Eberlein.

## II.     ANALYSIS

### A. Admissibility of Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S.

---

[1] The facts are set forth in greater detail in the Court's order on summary judgment, Filing No. 97.

at 589. The proponent of expert testimony bears the burden of providing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001).

Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck*, 338 F.3d at 860.

To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence "that the methodology underlying [the expert's] conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citations omitted). In making the reliability determination, the court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). Additional factors to consider include: "'whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.'" *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008)).

"This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject" these factors as the particular case demands. *Russell v. Whirlpool*, 702 F.3d at 456 (citation omitted). When making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn*

3

*v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012). However, "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[C]ases are legion" in the Eighth Circuit that "call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert,* 509 U.S. at 590). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 976 (8th Cir. 1995)).

District courts are "not to weigh or assess the correctness of competing expert opinions." *Id.* The jury, not the trial court, should be the one to 'decide among the conflicting views of different experts.'" *Kumho Tire Co.,* 526 U.S. at 153.

### B. Brian Hansen

Union Pacific first moves to exclude the expert testimony of Brian Hansen, a railway engineering consultant. Filing No. 65. He proposes to testify that the yard conditions at Neff Yard were unsafe due to debris and an uneven walkway. Union Pacific argues he is not qualified, his proposed testimony is not based upon scientific or

specialized knowledge, and his testimony would not assist the trier of fact. Filing No. 65-1.

Hansen is qualified to testify as an expert on the yard conditions at Neff Yard. He worked for Union Pacific from 1992 to 2013 and has worked as a consultant in railway engineering since. Filing No. 65-4 at 1–3. He has experience working as a welder maintaining and inspecting tracks and crossings and also worked as the manager of track maintenance at Union Pacific's North Platte yards which required him to oversee all aspects of railway engineering operations. Filing No. 65-4 at 1–3. He has received specialized training in track safety standards; the FRA regulations; and Union Pacific's own practices, rules, procedures, and engineering standards. Filing No. 65-4 at 3. Thus, Hansen is qualified to offer opinions on railyard maintenance and standards as proposed.

The Court also finds Hansen's proposed testimony is based on specialized knowledge and reliable methods. In reaching his opinions about the safety of the working environment at Union Pacific's Neff railyard, Hansen reviewed answers to interrogatories, video, photographs, and depositions related to the case and analyzed them based on his experience specific to track and yard maintenance and according to Union Pacific and industry standards to determine whether Union Pacific provided properly maintained and safe railroad yards. Filing No. 65-3. Based on this analysis, Hansen concluded, inter alia, that Union Pacific failed to avoid having a grade crossing where remote control operations were being performed; failed to maintain the margins along the track; and failed to ensure the proper gradation of ballast alongside the track. *Id.* This demonstrates a satisfactorily reliable methodology for purposes of Rule 702.

Lastly, the Court finds Hansen's testimony would assist the trier of fact. Union Pacific argues that a lay juror "can look at a walkway and determine whether it is uneven or dangerous." Filing No. 65-1 at 5. But Blackmore has shown that Hansen's proposed testimony involves the application of technical specifications and industry standards that are, in fact, beyond a lay juror's knowledge. Union Pacific also argues Hansen cannot assist the trier of fact because he does not know exactly where Blackmore fell on the day in question. Filing No. 65-1 at 8. As noted in the Court's order on summary judgment, there is a dispute of fact as to when and therefore where Blackmore fell and what car he was operating at the time. Filing No. 97 at 12. This is a foundational issue that Union Pacific can explore on cross-examination and a disputed fact which the jury will ultimately decide; it is not a basis to exclude Hansen's proposed expert testimony. *See Bonner, 259 F.3d at 929* ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (citation omitted)). Union Pacific's motion to exclude Hansen's testimony is denied.

### C. Brandon Ogden

Union Pacific next seeks to exclude the testimony of Brandon Ogden, a railroad safety consultant who Blackmore proposes will testify regarding Union Pacific's operational decisions and work practices. Filing No. 66. Specifically, Ogden provides proposed opinions relating to Union Pacific's implementation of Precision Scheduled Railroading, a method of operations; that the Neff railyard had an improper design for the operation Blackmore was undertaking on the day of his injury; that the locomotive was underpowered for the task at hand; that the pin lifter between the railroad cars was

6

defective; and that the railyard had unsafe footing conditions. Filing No. 66-4. Union Pacific argues Ogden is not qualified because he has experience only in railroad operations, not engineering or other areas. Filing No. 66-1 at 18. It also argues Ogden's opinions are not based on specialized knowledge and lack foundation because he did not perform first-hand, on-site inspections, but relied on photographs and testimony to formulate his opinions. Filing No. 66-1 at 6–16. Lastly, Union Pacific claims Ogden's testimony would not assist the trier of fact because they "are within the common knowledge of the Nebraska jury." Filing No. 66-1 at 20.

Ogden is qualified to testify as an expert on railroad operations and work practices. He worked for BNSF railroad for ten years including as terminal manager and superintendent of operations. Filing No. 85-4. In all the positions he worked, he was required to have knowledge concerning railroad transportation, mechanical and engineering instructions, industry rules, and safety standards. Filing No. 85-3. Additionally, in his managerial capacity, he was responsible for the oversight of the entire operation of the railroad, which included BNSF's transportation, mechanical, and engineering departments. Ogden's background, training, and experience demonstrate he is qualified to testify as proposed.

Ogden's opinions are also based on scientific, technical, or other specialized knowledge and would assist the trier of fact. He reviewed nearly one hundred documents relating to Blackmore's injury as well as the involved safety statutes, standards, and other witness's depositions. Filing No. 66-4 at 2–4. He then applied his specialized training and knowledge as set forth above to reach his conclusions, which included that Union Pacific's operating decisions and work practices driven by the adoption of Precision

Scheduled Railroading contributed to unsafe conditions; the area of Neff Yard where Blackmore was working was improperly designed for the task he was performing; the pin lifter on the railcar that injured Blackmore was defective; and the footing conditions in the area were unsafe. Filing No. 66-4 at 4–5. This shows Ogden has employed an appropriate methodology and that his testimony would go beyond the knowledge available to the lay jury. That he relied on photographs and other's testimony to formulate his opinions can be explored by Union Pacific on cross examination.

Although the Court rejects Union Pacific's contentions regarding Ogden, it does agree that one aspect of Ogden's testimony should be excluded because it is now irrelevant: he proposes to testify that the locomotive Blackmore was operating was underpowered for the operations he was performing at the time of the accident. Following the briefing on the motion to exclude Ogden's testimony, the Court granted Union Pacific summary judgment on Blackmore's FELA claim premised on a violation of the Locomotive Inspective Act because there was no dispute of fact that the power of the engine in question played no role in Blackmore's injury. Thus, any testimony from Ogden regarding the engine being allegedly underpowered on the day in question would not be relevant or assist the trier of fact. See *Daubert*, 509 U.S. at 591 (stating testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").

For these reasons, Union Pacific's motion to exclude Ogden's testimony is granted as to his proposed testimony regarding the train engine being underpowered but is denied as to all remaining issues.

### D. Alison Wohlhuter

Union Pacific next moves to exclude the testimony of Alison Wohlhuter, a life care planning specialist. Wohlhuter proposes to testify regarding the current and probable future medical and practical needs and expenses of Blackmore due to his leg amputation. Filing No. 67-3. Union Pacific argues Wohlhuter is not qualified because she trained as a pediatric NP and her opinions are unreliable because she bases her opinions on others' medical records and merely speculates about the future. Filing No. 67-1 at 5–10.

Wohlhuter is qualified to provide her opinions as a life care planner. While Union Pacific focuses solely on Wohlhuter's work as a pediatric NP, she also holds a certification as a nurse life-care planner, an advanced-practice RN, and in critical-care nursing. Filing No. 86-3. She has also worked as a certified nurse life-care planner for E4 Life Care Planning, LLC, since 2020, developing the type of individualized life-care plans including cost estimates that she provides for Blackmore. Filing No. 86-3. Wohlhuter's background, training, and experience demonstrate she is qualified to testify as proposed.

Wohlhuter also provides reliable opinions. While Union Pacific argues Wohlhuter merely relies on other's reports and speculates about the future, her report and proposed testimony demonstrate she has employed reliable methods for forming her opinions. In particular, she reviewed all of Blackmore's medical records including those of his neurologist, primary-care doctor, orthopedic surgeon, prosthetist, and therapist. Filing No. 67-4 at 3. She also conducted an in-home exam and interview of Blackmore. Then, utilizing her expertise and experience, she developed a comprehensive life-care plan for Blackmore's likely future needs and expenses. Filing No. 86-5. This methodology meets the reliability requirements of Rule 702. Union Pacific's motion is denied.

### E. Shannon Eberlein

Lastly, Union Pacific moves to exclude the testimony of Shannon Eberlein, a home-accessibility specialist. Blackmore proposes that Eberlein will testify regarding the need of his future housing to accommodate his disability and maintain his independence, safety, and functional ability following his leg amputation. Union Pacific argues Eberlein is not qualified as an expert and does not base her opinions on sufficient facts or reliable methods because she is not personally familiar with the Kansas City real estate market and conducted her research online. Filing No. 68-1.

Eberlein is qualified to testify as a home-accessibility expert. She has a degree in housing with an emphasis in accessibility design, is a certified accessibility specialist, has worked in accessibility deign for thirty-five years, and owns her own business specializing in home-accessibility assessments and cost estimations. Filing No. 87-3.

Eberlein also employs reliable methods based on solid data. Union Pacific points to her lack of real estate expertise, but Eberlein explained how her analysis is based on more than the housing market. In particular, she consulted with Wohlhuter in formulating her assessment of Blackmore's functional status, medical equipment needs, and accessibility requirements. Filing No. 68-4. Eberlein then assessed Blackmore's current residence and potential future housing options to accommodate his needs, including modifying his current home, purchasing or modifying a new home, or building a new home. Filing No. 68-4. While this research did entail accessing information about home costs in Blackmore's geographic market of Kansas City, it is more than a simple internet search as Union Pacific implies. Eberlein employed an appropriate and reliable

10

methodology based on sound data and is qualified to testify as an expert as proposed. Union Pacific's motion to exclude her testimony is denied.

### III.     CONCLUSION

For the foregoing reasons, the motions in limine are denied as to Hansen, Wohlhuter, and Eberlein, and granted in part and denied in part as to Ogden.

IT IS ORDERED:

1. Defendant's, Union Pacific's, motion to exclude the testimony of Brian Hansen, Filing No. 65, is denied;

2. Defendant's, Union Pacific's, motion to exclude the testimony of Brandon Ogden, Filing No. 66, is granted as to Ogden's proposed testimony regarding the locomotive being underpowered, but is denied in all other respects;

3. Defendant's, Union Pacific's, motion to exclude the testimony of Alison Wohlhuter, Filing No. 67, is denied; and

4. Defendant's, Union Pacific's, motion to exclude the testimony of Shannon Eberlein, Filing No. 68, is denied.

Dated this 24th day of February 2023.

BY THE COURT:

s/ Joseph F. Bataillon  
Senior United States District Judge